## L. E. WHITHAM & CO. v. STOUT et al.
### No. 12464.

Court of Civil Appeals of Texas. Fort Worth. June 6, 1931.

Rehearing Denied July 11, 1931.

Milburn E. Nutt, of Wichita Falls, for appellant.

Carrigan, King & Surles, of Wichita Falls, and F. G. Swanson, of Tyler, for appellees.

DUNKLIN, J.

L. E. Whitham & Company did certain street improvements in the city of Wichita Falls under contract with that city, and the city passed an ordinance assessing abutting property with a lien to pay for such improvements, all in accordance with the provisions of the city charter. Lot 10, block 15, Scotland addition to the city of Wichita Falls, was one of those abutting lots, and W. R. Stout owned it at the time of the passage of the ordinance fixing a lien on abutting property. The assessment ordinance was passed on July 5, 1926, and Stout sold the property on July 14, 1926. On April 12, 1926, which was prior to the passage of the ordinance by the city, W. R. Stout executed a deed of trust upon the property to secure the payment of a promissory note in the sum of $2,400 given to the North Texas Building & Loan Association for

material to build a house on the property above mentioned, and with that material he built a residence on it, which was finished about the time the assessment ordinance was adopted by the city.

L. E. Whitham & Company instituted this suit for personal judgment against Stout for the debt and for foreclosure of the lien for the street improvement made by him. W. R. Stout, the North Texas Building & Loan Association, and F. G. Swanson were all made parties defendants, but the North Texas Building & Loan Association was the only defendant who filed an answer. One of the defenses presented in that answer was that the property in controversy was the homestead of W. R. Stout at the time the assessment ordinance was passed and at the time the plaintiff did the street improvement work, and therefore it was exempt from the lien claimed by the plaintiff. There were further allegations in defendant's answer that it had foreclosed its lien and that defendant F. G. Swanson had bought at that foreclosure and now holds title to the property.

The trial of the case was before the court without a jury, and judgment was rendered awarding plaintiff a recovery against the defendant W. R. Stout for the debt evidenced by the paving certificate on which plaintiff's suit was based, but denying plaintiff a foreclosure on the lot because the same was the homestead of W. R. Stout at the time the assessment ordinance was passed, and the work done by plaintiff thereunder, and that therefore the property was exempt and the alleged lien never attached thereto.

From that judgment plaintiff has prosecuted this appeal; and the only proposition presented is that the evidence heard was insufficient to establish the homestead exemption.

The only testimony bearing on the homestead defense was that of W. R. Stout. We have carefully examined his testimony and have reached the conclusion that it was insufficient, prima facie, to sustain the defense of the homestead exemption.

Stout's testimony showed that he was engaged in the business of buying vacant lots for the purpose of improving and then selling them, and that he bought lots 10 and 11, in block 15, and lot 17, in block 11, all in Scotland addition, for that purpose; and that he lived in rented property and had no homestead unless some one of those lots constituted his homestead under the following testimony:

"I sold lot 11, in block 15, to Mr. Brazill on March 29, 1926, and I considered that property my homestead at that time; I built it for a home. At that time I was operating under this system—I was building one house and selling it and building another one; I always sold the first one I built before I started another one. For reasons of my own I never had but one house under construction at one time. I was building the houses to sell them if I could; if I couldn't sell them I lived in them myself. I mean to say a place was my homestead if I moved into it, and I considered the house I was living in as my homestead until I sold it, and it was my homestead unless I sold it.

"If I sold the house I was living in I then considered the house I was building and had under construction as my homestead. Lot 10 in block 15 was the property on which I had a house under construction and claiming it as I have explained to the court after I sold lot 11 in block 15 to Mr. Brazill. That was the next one and subsequent to that I had lot 17 in block 11, which I also sold. I sold lot 11 in block 15 about March 29, 1926. I then owned lot 10 in block 15 until July 14, 1926, although I don't remember exactly the date of the transaction. From the time I sold lot 11, block 15, to Brazill, I did not claim any other homestead or have any other house under construction. That was the only house I had built and completed during the period from March 29, 1926, to July 14, 1926. Subsequent to July 14, 1926, I constructed a house on lot 17, block 9, with the intention of selling it if I could, but I considered each one of those properties my homestead at the time I owned them. * * *

"The assessment ordinance appears to be dated July 5, 1926, as stated by you (Mr. King) and with reference to whether I intended to make lot 10, block 15, Scotland Addition my homestead at that time, I will say I don't think so, and I had not sold this lot at that time; it was sold July 14, 1926. I suppose it was my intention on July 5, 1926, to claim this property as my homestead. That was all the property I had at that time to occupy as a homestead. * * *

"I am not positive whether I owned several lots along about that time, that is, in 1926; I think I had one other lot besides that. At the time I owned lot 10 in block 15 I don't know whether I owned another lot or not. I might have bought it a little later. Yes, I thing I did have one other lot at that time, however, the records will show what I had at that time.

"At the time this assessment ordinance was passed I owned another lot in the next block, but I have forgotten when I bought it. I had it after I sold this lot to Mr. Wharton. In case I sold the other one it was my intention to improve this lot by building a house on it and moving on it. I was in the business of buying and selling houses and lots. My business was not to live in the house and make it my permanent home, but on the other hand it was my business to build a house and sell it if I could and take a profit and build another one and do the same thing over and over again. I never did live on lot 10, in block 15; I never lived on it one day and no member of

my family ever lived on this lot. The house was completed when I sold it. I never did carry my intention into actual existence by moving into the house. If I had intended to live in this house at any time I did not exercise my intention, and I was paying rent at the time I was living there. That was my business to build a house and sell it, and I never actually moved any of my furniture in that house, nor did my family ever live in it at any time. I don't know how long after I completed the house it was before I sold it; it generally took about thirty days to complete one. My real purpose in building a house on lot 10 was to sell it and make a profit on it if I could; that is what I intended to do with the property; I would have moved on it and stayed there until I could sell it. I had a profit in the place and it was my intention to get my profit out of it at the earliest time. Since that time I have acquired other property, but I do not own any property now. I don't own any home at this time.

"I judge I continued in the business of buying lots and building houses on them and then selling them for a period of about eight or nine months. Some of the lots I didn't improve, I sold some of them without improving them. I guess there were two or three or maybe four I handled that way, and I built some more houses after that for other parties.

"Before I owned this lot I had been in the business of buying lots and building houses on them for possibly two or three months; I have been building and selling ever since I've been in Wichita Falls. I think I built and sold two houses before I had this lot. The first house I built I lived in it for over a year; I didn't build it for the same purpose I built the other ones. I sold that house, however, and made a profit on it, and I sold the next one and also made a profit on it. I then decided I would continue in that activity. I would always sell a house if I had an opportunity to make a profit out of it."

It thus appears that Stout's primary purpose in improving the lot was to sell it after it was improved, and that he had no definite fixed intention to occupy it as a homestead at the time the assessment lien was fixed, which was on July 5, 1926. His intention to so use it was conditional only, and the condition upon which that intention rested never happened. It is a well-recognized rule that an intention to occupy a vacant lot as a homestead, followed forthwith by improvements constructed thereon, for such use, is sufficient to impress the property with the homestead character. But the facts testified to by Stout showed clearly that lot 10 did not come within the operation of that rule. To hold otherwise would be to unreasonably extend the doctrine of homestead exemption, and far beyond any precedent so far as has come to our knowledge. And while we know of no decision directly applicable to the specific facts shown here, we believe the conclusion we have reached is supported in principle by such authorities as Allen v. Whitaker (Tex. Civ. App.) 27 S. W. 507; Brooks v. Chatham, 57 Tex. 31; Barnes v. White, 53 Tex. 631; Franklin v. Coffee, 18 Tex. 413, 70 Am. Dec. 292; Jacobs, Bernheim & Co. v. Hawkins, 63 Tex. 1; 29 Corpus Juris, p. 804, § 50.

Accordingly, the judgment of the trial court is reversed, and the cause is remanded.

### On Motion for Rehearing.

In our former opinion the testimony of W. R. Stout, who was introduced by appellee the North Texas Building & Loan Association to establish the homestead exemption, was set out in full, and it was the only testimony offered to sustain that defense.

In appellant's motion for rehearing, praying that our former order remanding the case for another trial be set aside, and that the judgment be here rendered decreeing the foreclosure prayed for, it is urged that since the proof of the homestead exemption depended entirely upon the testimony of W. R. Stout, who has testified fully upon that issue and whose testimony was insufficient as a conclusion of law to sustain the defense as held by us, therefore judgment should be here rendered, awarding appellant the foreclosure of lien prayed for. And since appellee has not suggested the probability of procuring any further testimony upon that issue, we have concluded that the motion should be and the same is hereby granted.

Accordingly, for the reasons stated in our original opinion, the judgment of the trial court denying plaintiff a foreclosure of the lien prayed for is reversed, and judgment is here rendered awarding the plaintiff, who is appellant here, that relief.

The recovery awarded plaintiff against W. R. Stout, of which no complaint is made, is left undisturbed.